UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-12204-RGS

WILMINGTON SAVINGS FUND SOCIETY, FSB,
d/b/a CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY,
BUT SOLELY AS TRUSTEE FOR BCAT 2015-14BTT

v.

NINA B. COLLART et al.

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

March 29, 2019

STEARNS, D.J.

Wilmington Savings Fund Society, FSB (Wilmington), brought this lawsuit against Nina Collart (Nina) and Thomas Mann, Jr. (collectively defendants).[1] At issue is the validity of a mortgage executed by Lucien Collart, Jr. (Lucien) on the Collart family property in Harwichport, Massachusetts. The Amended Complaint alleges fraudulent transfer (Count IV) and seeks a declaratory judgment (Count I), an equitable lien

---

[1] Wilmington, d/b/a Christiana Trust, brought this suit solely in its capacity as Trustee for BCAT 2015-14BTT. Nina is named both in her individual capacity and as Trustee for the Lucien R. Collart, Jr. Nominee Trust (the Lucien Trust) and the Anne B. Collart Nominee Trust (the Anne Trust). Mann is named solely in his capacity as Trustee of the Nina Collart Nominee Trust (the Nina Trust).

(Count II), and a constructive trust (Count III). Both parties have moved for summary judgment. For reasons that will be explained, the court will allow defendants' motion on Counts III and IV, enter a declaratory judgment invalidating the Mortgage, and grant Wilmington an equitable lien.

## BACKGROUND

The following facts are not disputed by the parties. On March 26, 1999, Anne Collart (Anne) and Lucien, together with their daughter Nina, acquired a real property interest in 679 Route 28, Harwichport, Massachusetts (the Property), as joint tenants with right of survivorship. On May 18, 1999, the Collarts executed three nearly identical Declarations of Trust establishing the Anne Trust, the Nina Trust, and the Lucien Trust, in which each family member was the sole beneficiary of the Trust bearing his or her name. Anne was the initial Trustee of the Lucien and Nina Trusts. Lucien was the initial Trustee of the Anne Trust. That same day, the Collarts granted each Trust an undivided, one-third interest in the Property and an adjacent lot (681 Route 28, Harwichport, Massachusetts) as tenants in common.[2]

---

[2] The three Declarations of Trust and the associated deeds were recorded with the Barnstable County Registry of Deeds on September 23, 1999.

Anne died on April 18, 2002.[3] Anne's will bequeathed Lucien certain personal property and distributed the remainder of her estate into two trusts: the Tax Shelter Trust Fund and the Marital Trust Fund (the Estate Trusts). The terms of the Estate Trusts entitled Lucien to the net income of the Trusts, but permitted him to access the principal only if he was otherwise unable to maintain his standard of living. Upon Lucien's death, Nina was to receive the remaining corpus of the Estate Trusts. Despite the explicit instructions of Anne's will, Lucien did not transfer any of Anne's estate to the Estate Trusts, nor did he appoint a successor Trustee for the Lucien Trust. Nina, however, appointed Mann as the successor Trustee of the Nina Trust on March 8, 2006, and recorded the appointment on September 17, 2007.

Several years after Anne's death, Lucien — at the behest of his friend, Brenda Tri — undertook the purchase of an additional property located at 299 Main Street in South Dennis, Massachusetts (the Bass River Property) for $2.3 million.[4] On April 17, 2007, Lucien closed on the property and paid

---

[3] The Barnstable County Probate and Family Court appointed Lucien executor of Anne's estate on June 13, 2002.

[4] Lucien met Tri in 2006 through a neighbor. He eventually began living part time at Tri's farm and spent approximately $175,000 on her credit card bills, cruises for the two of them, and the purchase of two horses for her farm.

the sellers, Edward and Debbie Crowell, a deposit of $230,000.[5] To satisfy the remaining balance, Lucien liquidated assets from Anne's estate and her Individual Retirement Account (IRA), as well as his own portfolio and IRA. Still short of funds, Lucien executed a mortgage (the Mortgage) against the Property with Bank of America, N.A. (BOA) on June 13, 2007, to secure a $500,000 home equity line of credit (HELOC).[6] The Mortgage was recorded with the Registry of Deeds on August 7, 2007 and identifies the Grantor as "LUCIEN R. COLLART JR., AN UNMARRIED PERSON." Defs.' Ex. I (Dkt # 40-9) at 2. Lucien subsequently completed his purchase of the Bass River Property using the full HELOC.

Expressing concern for her father's mental health (and Tri's influence on his financial affairs), Nina petitioned the Probate Court to appoint a

---

[5] At the closing, the Crowells provided Lucien short term financing for the remaining balance of the purchase price. The sale quickly became the subject of litigation, as the Crowells had already executed a contract to sell the Property to Eugene and Sandra McGillycuddy. The McGillycuddys sued the Crowells for specific performance and sued Tri for interference with contractual relations. Lucien, through his by-then-court-appointed guardian, sued the Crowells to rescind the sale and sued Tri to void an alleged sale of the Bass River Property from Lucien to Tri.

[6] Nina, who was staying at the Property, learned of the Mortgage the same day Lucien obtained it. The Mortgage was subsequently recorded in the Registry of Deeds on August 7, 2017. Nina's counsel sent a letter to BOA disputing the Mortgage on September 11, 2007.

conservator for Lucien on July 29, 2008.[7] The Probate Court approved the petition and appointed John Conathan II as Lucien's guardian, responsible for managing all of Lucien's property, finances, assets, and obligations. Between July 30, 2008, and July 30, 2010, Conathan made regular payments on the HELOC account, totaling $23,358.10. On counsel's advice (that the Mortgage was invalid), Conathan stopped making payments on the HELOC.

During this time, Conathan negotiated a settlement of the Bass River Property litigation, which included a sale of the property for $1.75 million. The settlement also required the Crowells to pay Lucien $250,000. To approve the sale, Conathan sought the appointment of a Guardian ad Litem in May of 2009. The Probate Court's appointee, Carol Kenny, determined that selling the Bass River Property was in Lucien's best interest. On November 17, 2009, the Probate Court approved the sale after receiving Kenny's report.[8] Conathan used the proceeds of the sale to fund a securities account on behalf of Lucien, Anne's estate, and Nina. Despite Kenny's

---

[7] Nina unsuccessfully petitioned the Probate Court to appoint a conservator over Lucien in October of 2007.

[8] Kenny's report recommended, *inter alia*, that "[o]nce the proceeds from the closing are received, [Conathan] will need to return the $800,000 to $900,000.00 to the wife's estate, [and] the $500,000 equity line from the [Property] must be repaid." Pl.'s Ex. 15 (Dkt # 46-15) at 16.

recommendation, Conathan did not use any of the proceeds to satisfy the balance owed on the HELOC.

Lucien passed away on August 28, 2013. On June 15, 2015, the Probate Court entered an Order of Final Settlement granting Nina the balance of Lucien's estate — approximately one million dollars. Nina subsequently recorded her appointments as the successor Trustee of the Anne Trust and the Lucien Trust. BOA assigned the Mortgage to Wilmington on September 16, 2015.[9] In a letter dated November 2, 2016, Nina, acting through counsel, requested that Wilmington discharge the Mortgage. On June 17, 2017, acting in her capacity as Trustee of the Anne and Lucien Trusts, Nina conveyed the Property to herself in her individual capacity.[10]

On November 9, 2017, Wilmington initiated this lawsuit. Both parties moved for summary judgment on January 4, 2019.[11] The court heard

---

[9] The parties contend there were two assignments; however, closer examination of the exhibits indicates the assignment executed on September 16, 2015, was filed twice with the Registry of Deeds — once on October 20, 2015, and again on January 22, 2016.

[10] Mann, acting as Trustee of the Nina Trust, had previously signed the deed on November 1, 2016.

[11] Defendants moved for summary judgment on all counts. Wilmington moved for summary judgment on its claims for declaratory

argument on February 27, 2019.

**DISCUSSION**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). This standard does not change on cross-motions — the court views each motion separately and draws all reasonable inferences in favor of the non-moving party. *Pac. Indem. Co. v. Deming*, 828 F.3d 19, 23 (1st Cir. 2016).

### *<u>The Validity of the Mortgage</u>*

In Count I, Wilmington seeks a declaratory judgment acknowledging the Mortgage as a valid encumbrance and first priority lien on the Property. Because the validity of the Mortgage turns on the facts as they existed in June

---

judgment and an equitable lien. In its Opposition, Wilmington did not address the constructive trust or fraudulent transfer claims.

of 2007 and is central to a resolution of the dispute between the parties over the $500,000 HELOC, the court is satisfied that Count I presents an actual controversy ripe for judicial resolution. *See Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322*, 651 F.3d 176, 188 (1st Cir. 2011) (reciting the "fitness" and "hardship" standards for declaratory judgment).

*The Mortgage was Executed in Lucien's Individual Capacity*

Defendants maintain, and the court agrees, that Lucien had no authority to execute the Mortgage in his individual capacity.[12] A trustee may only bind the trust estate if he is acting in his capacity as trustee. *Rogaris v. Albert*, 431 Mass. 833, 836 (2000), citing Restatement (Second) of Trusts § 271 cmt. b (Am. Law Inst. 1957). "[W]hatever authority the signer may have to bind another, if he does not sign [in that capacity], he binds himself, and no other person." *Id.* (alterations in original), quoting *Stackpole v. Arnold*, 11 Mass. 27, 29 (1814). A trust cannot be bound by a conveyance that makes no reference to the trust or to a party's role as trustee. *See id.* Where a grantor "has nothing to convey . . . [t]he purported conveyance is a nullity, notwithstanding the parties' intent." *Bongaards v.*

---

[12] Defendants also contend that Lucien did not have the mental capacity to execute the Mortgage. Wilmington disputes this conclusion. The court need not reach this issue.

*Millen*, 440 Mass. 10, 15 (2003).

Here, the Mortgage was made between "LUCIEN R COLLART JR., AN UMARRIED PERSON . . . and Bank of America, N.A." Defs.' Ex. I (Dkt # 40-9) at 2. Lucien signed the Mortgage in his own name and did not indicate that he was signing in his capacity as the Trustee for any Trust.[13] Moreover, the Mortgage makes no reference to any of the nominee Trusts, nor does it otherwise indicate that Lucien was acting on behalf of their interests. The parties do not dispute that as of June 13, 2007, Lucien owned no part of the Property individually. Accordingly, when Lucien executed the Mortgage in his individual capacity, he had nothing to convey to BOA and the purported encumbrance was a nullity. *See Bongaards*, 440 Mass. at 15 (invalidating a conveyance because the trustee had no authority to convey the property in her individual capacity).

<u>Lucien's Authority to Mortgage the Property</u>

In response, Wilmington first argues that the Mortgage is nonetheless valid because Lucien "possessed complete authority over the Lucien Trust and the Anne Trust." Pl.'s Opp'n (Dkt # 52) at 2. I disagree. "The interpretation of a written trust is a matter of law to be resolved by the court.

---

[13] Lucien was never Trustee of the Nina Trust or the Lucien Trust.

The rules of construction of a contract apply similarly to trusts; where the language of a trust is clear, we look only to that plain language." *Ferri v. Powell-Ferri*, 476 Mass. 651, 654 (2017) (citations omitted). In Massachusetts, nominee trusts are trusts created to hold title to real property in which the trustee has "only perfunctory duties." *Roberts v. Roberts*, 419 Mass. 685, 687 (1995). The defining feature of a nominee trust is that "the trustees lack power to deal with the trust property except as directed by the beneficiaries." *Id.* at 687 n.2, quoting *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992).

Turning to the Lucien Trust, Wilmington asserts that Lucien's authority as sole beneficiary is sufficient to render the Mortgage enforceable against the Trust's share of the Property.[14] However, as Wilmington acknowledges, "the express terms of the Lucien Trust provided [Lucien] the power *to direct the Trustee* to buy, sell, convey, assign, mortgage or otherwise dispose of the 1/3 share in the . . . Property." Pl.'s Opp'n (Dkt

---

[14] None of the cases cited by Wilmington in support of this proposition involve a beneficiary acting on behalf of the trust in the absence of a properly appointed trustee. *See In re Grand Jury Subpoena*, 973 F.2d at 48; *Apahouser Lock & Sec. Corp. v. Carvelli*, 26 Mass. App. Ct. 385, 388 (1988); *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 893 (1st Cir. 1979).

# 52) at 5-6 (emphasis added).[15] Following Anne's death, Lucien failed to appoint a successor Trustee as provided by section 7.3 of the Declaration of Trust.[16] While the duties of a trustee in a nominee trust may be perfunctory, a trustee — appointed and acting in compliance with the terms of the trust — is the only person empowered to perform binding acts on behalf of the trust. *See Johnston*, 595 F.2d at 893 ("Where a trust instrument requires a specified number of trustees, a lesser number cannot act validly on behalf of the trust."). Here, Lucien was not the Trustee of the Lucien Trust and therefore — by the express terms of the Trust — could not mortgage the Trust property.

Moving to the Anne Trust, Wilmington asserts that "at the time Lucien executed the Mortgage in 2007, Lucien was both [T]rustee and sole

---

[15] Section 4.2.1 of the Declaration authorizes the Trustee "to buy, sell, convey, assign, mortgage or otherwise dispose of all or any part of the Trust Estate" at the direction of all of the beneficiaries. Defs.' Ex. D (Dkt # 40-4) § 4.2.1. In contrast, the Declaration affords no similar authority to the beneficiaries.

[16] "In the event that there is no Trustee, either *through the death or resignation of a sole Trustee* without prior appointment of a successor Trustee . . . a person purporting to be a successor Trustee hereunder *may record in the Registry of Deeds* an affidavit, under pains and penalty of perjury, stating he or she has been appointed by all of the Beneficiaries as successor Trustee." Defs.' Ex. D (Dkt # 40-4) § 7.3 (emphases added).

beneficiary of the Anne Trust meaning that he had full authority over the trust estate." Pl.'s Mem. (Dkt # 44) at 8. While it is undisputed that Lucien was the Trustee of the Anne Trust at the time the Mortgage was granted, Wilmington's conclusion that "Anne's sole beneficiary status . . . transferred to Lucien upon her death," Pl.'s Opp'n (Dkt # 52) at 3, is based on a selective reading of the Trust instrument and ignores the express language of the Declaration.

> The legal representative of the estate of any deceased Beneficiary shall acquire all of the right, title and powers which the deceased Beneficiary had with regard to this Trust and its corpus. Said interest in this Trust of a deceased Beneficiary *shall pass in accordance with the Will of the deceased Beneficiary* . . . .

Defs.' Ex. C (Dkt # 40-3) § 3.4 (emphasis added). As Anne's will makes clear, the entirety of Anne's estate (with the exception of some tangible personal property) was to be distributed between the two Estate Trusts. Defs.' Ex. G (Dkt # 40-7) §§ 3-4. Lucien was entitled to receive only the net income of the Estate Trusts, while Nina was to receive the corpus upon Lucien's death.[17] As such, Anne's beneficial interest in the Anne Trust

---

[17] Lucien was only permitted to access the principal of the estate if he was otherwise unable to maintain his standard of living. Defs.' Ex. G (Dkt # 40-7) § 5(a)-(b). Neither party alleges that Lucien satisfied this criteria for accessing the principal of Anne's estate.

12

passed to the Estate Trusts and not to Lucien.[18]

Anne's will named Lucien as the Trustee of the Estate Trusts and provided him with the authority, acting in a fiduciary capacity, to sell or mortgage the property of her estate. *Id.* § 10. Massachusetts law, however, requires trustees to "administer the trust solely in the interests of the beneficiaries." Mass. Gen. Laws ch. 203E, § 802(a); *see also Johnson v. Witkowski*, 30 Mass. App. Ct. 697, 706 (1991) ("A trustee's first duty is the protection of the trust estate. No self-interest can be allowed to conflict with this responsibility."). This fiduciary obligation "will be strictly enforced." *Johnson*, 30 Mass. App. Ct. at 706. Any self-dealing encumbrance of trust property "shall be voidable by a beneficiary affected by the transaction." Mass. Gen. Laws ch. 203E, § 802(b). Because Lucien obtained and used the Mortgage to purchase the Bass River Property solely for himself, he violated his duty of loyalty to the Estate Trusts, thereby

---

[18] Because Lucien was not the sole trustee and sole beneficiary of the Anne Trust, the trust did not terminate or become a "nullity" as Wilmington suggests. *See Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 409 (2000) (holding that a nominee trust "must still adhere to the rule that no trust exists when the same individual is the sole settlor, sole trustee, and sole beneficiary"); Restatement (Third) of Trusts § 69 (Am. Law Inst. 2012) (same).

13

rendering the pledge of the Anne Trust voidable.[19]  *See, e.g., Steele v. Kelley*, 46 Mass. App. Ct. 712, 734 (1999) (noting that the duty of loyalty "presumptively precludes . . . any sale of trust property or any interest therein to the trustee individually . . . or the purchase of any encumbrance on the trust property for himself, however fair the consideration.").

*BOA's Reliance on Lucien's Authority to Mortgage the Property*

Wilmington next claims that its predecessor, BOA, was entitled to rely

---

[19] Wilmington also argues that Lucien had the authority to mortgage the Nina Trust's portion of the Property. However, because Lucien was not a Trustee of the Nina Trust, he had no authority — implied or otherwise — to act on the Trust's behalf. Wilmington's reliance on *Phillip Morris* to the contrary is misplaced. *Phillip Morris, Inc. v. Litle*, 30 Mass. App. Ct. 936 (1991). There, the Massachusetts Appeals Court held that a husband, who was also his wife's business partner, had implied authority to sign an extension of credit in her name and on her behalf. *Id.* at 937-938. No such analogous relationship exists here.

Wilmington's further contention that Nina did not object to the Mortgage is belied by the fact that Nina's counsel twice disputed the Mortgage in writing and requested that it be discharged.

Finally, Wilmington's repeated appeals to Kenny's report as dispositive of the Property's ownership are unpersuasive. Kenny was tasked only with reviewing the sale of the Bass River Property. *See* Pl.'s Ex. 15 (Dkt # 46-15) at 2 ("I was appointed by [sic] Guardian ad Litem . . . to represent the interests of the ward . . . to review the matter and to file a written report to the Court regarding a Petition for License to Sell Real Estate by Guardian John Conathan II . . . ."). The Probate Court's order authorizing the sale makes no mention of the Mortgage or the $500,000 HELOC.

on Lucien's authority to encumber the entire property. Again, I disagree. A trust concerning land recorded in the Registry of Deeds "shall be equivalent to actual notice to every person claiming under a conveyance, attachment or execution thereafter made or levied." Mass. Gen. Laws ch. 203, § 2. A mortgagee (like BOA) is therefore on notice that a mortgagor does not own the property individually or is not a properly appointed trustee. *See Plunkett v. First Fed. Sav. & Loan Ass'n of Boston*, 18 Mass. App. Ct. 294, 304-306 (1984) (allowing beneficiaries to void a mortgage because the bank had notice that a successor trustee was improperly appointed). Further, the Declarations of Trust each explicitly state:

> [e]very agreement, lease, deed, mortgage, note or other instrument or document executed or action taken *by the person or persons appearing from the records of the Registry of deeds to be Trustees as required by Paragraph 2.1* shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that . . . the execution and delivery thereof or taking of such action was duly authorized, empowered and directed by the Beneficiaries and that such instrument or document or action is valid, binding, effective and legally enforceable.

Defs.' Exs. B, C, D (Dkt # 40-2, 40-3, 40-4) § 2.2 (emphasis added).

That Lucien "executed the Mortgage under an affirmative warranty that he had full right, power and authority to execute and deliver the [M]ortgage" does not obviate BOA's statutory notice of the terms of the

15

Trusts. Pl.'s Mem. (Dkt # 44) at 13. At the time the Mortgage was granted, the Declarations recorded in the Registry of Deeds indicated that all portions of the Property were held in trust and that Lucien was Trustee only of the Anne Trust. BOA, therefore, could only have relied on Lucien's ability to mortgage the Anne Trust's interest in the Property in his capacity as Trustee — something he did not do when he signed individually. As such, BOA, as Wilmington's predecessor, had no basis to rely on Lucien's assurances.

### *Equitable Lien*

Wilmington also seeks "an equitable lien against the Property in an amount up to $500,000 *nunc pro tunc* to August 7, 2007." Am. Compl. (Dkt # 5) ¶ 74. Because the Property, through the invalid Mortgage and the HELOC, is the source of defendants' unjust enrichment, I agree that an equitable lien against the Property is an appropriate form of restitution. An equitable lien is "a charge upon specific property, entitling the holder of the lien to have the property applied in equity to the payment of his debt as against all other claimants of the property except purchasers for value without notice." *Ballentine v. Eaton*, 297 Mass. 389, 393 (1937). "In Massachusetts, an equitable lien may arise from the express agreement of a debtor to pay a creditor out of a specific fund or property." *United States v.*

*Friedman*, 143 F.3d 18, 23 (1st Cir. 1998). This equitable remedy is particularly appropriate when a mortgage held by a mortgagee is otherwise void. *See Keville v. McKeever*, 42 Mass. App. Ct. 140, 159 (1997).

The Restatement specifies that "[i]f a defendant is unjustly enriched by a transaction in which . . . the connection between unjust enrichment and the defendant's ownership of particular property makes it equitable that the claimant have recourse to that property . . . the claimant may be granted an equitable lien." Restatement (Third) of Restitution and Unjust Enrichment § 56(1) (Am. Law Inst. 2011); s*ee also Bank of New York v. Morgan*, 82 Mass. App. Ct. 1119, at *1 (2012) (Rule 1:28 unpublished opinion). "Unjust enrichment occurs when a party retains the property of another 'against the fundamental principles of justice or equity and good conscience.'" *Bonina v. Sheppard*, 91 Mass. App. Ct. 622, 625 (2017), quoting *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). A claim of unjust enrichment requires that the defendant receive an unjust benefit, a determination "that turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013).

Here, Nina received the full balance of Lucien's estate upon his death, totaling over $1 million. This amount necessarily included the proceeds

from the original $500,000 HELOC given in exchange for the Mortgage on the Property. While Lucien had a duty to preserve the Estate Trusts on Nina's behalf, he had no obligation to maintain his own estate for Nina's benefit. Following the sale of the Bass River Property, Conathan established a securities account to satisfy Lucien's outstanding obligation to Anne's estate.[20] *See* Pl.'s Ex. 7 (Dkt # 46-7) at 126:7-25. Nina's interest in Anne's estate, therefore, was fully restored prior to Lucien's death. As such, any losses from the Bass River Property were Lucien's (and, through his estate, Nina's) to bear and cannot be placed on Wilmington's shoulders. To allow Nina to retain these funds would result in an unjust enrichment.[21]

---

[20] This is consistent with the Kenny's recommendation that "[o]nce the proceeds from the closing [on the Bass River Property] are received, [Conathan] will need to return the $800,000 to $900,000.00 to the wife's estate." Pl.'s Ex. 15 (Dkt # 46-15) at 16.

[21] Defendant's citation to cases involving equitable subrogation are unpersuasive. *See Wells Fargo Bank, N.A. v. Comeau*, 92 Mass. App. Ct. 462 (2017); *Wells Fargo Bank v. Nat'l Lumber Co.*, 76 Mass. App. Ct. 1 (2009). "Equitable subrogation is an exception to the basic principle that determines priority among mortgages, 'first in time is first in right.'" *East Boston Sav. Bank v. Ogan*, 428 Mass. 327, 329 (1998). In refusing to apply equitable subrogation in *Comeau,* the Massachusetts Appeals Court emphasized equitable considerations inapplicable to an equitable lien, including the lack of a subordinate lien and the prejudice imposed on other parties. *See* 92 Mass. App. Ct. at 466-468. As such, the *Comeau* court's finding that the defendant was not unjustly enriched is of no import.

Wilmington is entitled to receive an equitable lien on the Property in the amount of $500,000, less the principal already paid.[22]

### *Constructive Trust and Fraudulent Transfer*

Defendants also move for summary judgment on Wilmington's claims for constructive trust (Count III) and fraudulent transfer (Count IV). As the court has awarded Wilmington equitable relief, additional restitutionary relief in the form of a constructive trust is redundant and inappropriate.[23] Wilmington's claim for fraudulent transfer "depends on the existence of an independently valid claim." *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 153 (2013). Because the Mortgage was not a valid encumbrance, Wilmington has no basis to allege fraudulent transfer and the claim must be dismissed. *Id*. at 154.

### ORDER

For the foregoing reasons, Wilmington's motion for summary judgment is <u>ALLOWED</u> with respect to the equitable lien, but is otherwise

---

[22] Between July 30, 2008, and July 30, 2010, Conathan made regular payments on the Mortgage totaling $23,358.10.

[23] Imposition of a constructive trust would be inappropriate because defendants did not obtain the assets of Lucien's estate or title to the Property through fraud or mistake. *See Maffei v. Roman Catholic Archbishop of Bos.*, 449 Mass. 235, 246 (2007).

DENIED. Defendants' motion for summary judgment is DENIED with respect to the equitable lien, but is otherwise ALLOWED. A declaratory judgment will enter invalidating the Mortgage on the Property. An equitable lien on the Property will be entered in favor of Wilmington (as Trustee for BCAT 2015-14BTT) *nunc pro tunc* to August 7, 2007, in the amount of $500,000, less the principal already paid.

As the prevailing party, Wilmington will, within fourteen (14) days of the date of this Order, submit a Proposed Form of Final Judgement.

                              SO ORDERED.

                              /s/ Richard G. Stearns
                              UNITED STATES DISTRICT JUDGE